**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**CLOUD FOUNDATION**, a non-profit Colorado Corporation; **GINGER KATHRENS**; and **DENIZ BOLBOL**,

Plaintiffs,

v.

**DOUGLAS J. BURGUM**, Secretary, Department of the Interior, in his official capacity; **BILL GROFFY**, Director, Bureau of Land Management, in his official capacity; **BARRY BUSHUE**, State Director, Oregon-Washington Bureau of Land Management, in his official capacity; and **SHANE DEFOREST**, District Manager, BLM Vale District Office, in his official capacity,

Defendants.

Case No. 2:23-cv-01154-HL

**OPINION AND ORDER ADOPTING WITH CLARIFICATION FINDINGS AND RECOMMENDATION**

**IMMERGUT, District Judge.**

On May 11, 2026, Magistrate Judge Hallman issued his Findings and Recommendation ("F&R"), ECF 66, recommending that Defendants' Cross Motion for Summary Judgment ("Defendants' Mot.") be GRANTED. Judge Hallman also recommended that Plaintiffs' Motion for Summary Judgment be DENIED. Plaintiffs filed Objections to the Findings and

Recommendation, ECF 74. Defendants filed a timely response and additional Objections to the F&R's determination that Plaintiffs had standing to bring their NEPA claim, ECF 75. With leave of this Court, ECF 77, Plaintiffs filed an additional Response, addressing why they had standing to bring their NEPA claim, ECF 78.

Under the Federal Magistrates Act ("Act"), as amended, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If a party objects to a magistrate judge's F&R, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* But the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Nevertheless, the Act "does not preclude further review by the district judge, sua sponte" whether de novo or under another standard. *Thomas*, 474 U.S. at 154.

This Court has reviewed de novo the portions of Judge Hallman's F&R to which Defendants and Plaintiffs objected. This Courts adopts in full Judge Hallman's F&R with the following clarifications. First, regarding Plaintiffs' First Amendment claim, this Court agrees—although with slightly different reasoning—that Plaintiffs' claimed right to have cameras on helicopters, at trap sites, and at temporary holding pens lacks the historical basis necessary to support a qualified right of access. Second, this Court adopts Judge Hallman's determination that the NEPA claim fails on the merits.

## BACKGROUND

This Court adopts the background as described in the Findings and Recommendation, ECF 66.

## DISCUSSION

### A. First Amendment Claim

This Court adopts in full Judge Hallman's determination that as a matter of law, "BLM's refusal to adopt cameras for wild horse gathers" does not violate Plaintiffs' "First Amendment right of access for observation." F&R, ECF 66 at 17. Plaintiffs cannot establish "a historic tradition of access—through cameras— to the areas they identify" including helicopters, trap sites, and temporary holding pins. *Id.* at 24. That historic tradition of access is necessary for Plaintiffs to establish a qualified right of access. *Id.* at 17–18. And absent that qualified right of access, Plaintiffs' First Amendment claim fails on the merits. *Id.*

In addition, this Court seeks to clarify why "a historic tradition of access" is necessary to establish a qualified right of access to observe a given government activity. *Id.* at 24. To determine whether a qualified right of access exists, courts look to "two complementary considerations." *Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1, 8 (1986). First, looking to "experience," courts ask whether "the place and process have historically been open to the press and general public." *Id.* at 8–9. Second, looking to "logic," courts consider whether public access would play "a significant positive role in the functioning of the particular process in question." *Id.* These two considerations, "experience" and "logic," are known as the *Press-Enterprise* factors.

Judge Hallman observed that these two complementary considerations are two independent requirements that cannot be weighed against each other. F&R, ECF at 17–18. As a

matter of black letter Ninth Circuit precedent, it is not clear that this statement is correct. In *Civ. Beat L. Ctr. for Pub. Int., Inc. v. Maile*, 117 F.4th 1200 (9th Cir. 2024), the Ninth Circuit noted that panels of the Ninth Circuit have conflicted as to whether the two *Press-Enterprise* factors are independent requirements or if they can be weighed against each other. *Id.* at 1207 n.2.

This Court need not resolve this debate. Plaintiffs' Motion for Summary Judgment frames the experience and logic considerations as independent requirements that must be met. Specifically, it states that "[w]hen a government activity has historically been open to the press and public and the public has played a significant positive role in the functioning of that government activity, the government may impose only such restrictions as are narrowly tailored to serve an overriding government interest." Plaintiffs' Motion for Summary Judgment, ECF 44 at 11. The use of the word, "and," suggests that it is Plaintiffs' position that both the history and logic requirements must be met. Defendants do not contest this characterization. *See* Cross-Motion for Summary Judgment, ECF 57 at 19. Accordingly, allowing the parties to "frame the issues for decision[,]" *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (citation modified), this Court concludes that the absence of a historic tradition of access through cameras to helicopters, trap sites, and temporary holding pens precludes Plaintiffs' First Amendment claim.[1]

**B. NEPA Claim**

This Court also affirms Judge Hallman's determination that Plaintiffs' NEPA claim fails on the merits. As to the issue of standing and Plaintiffs' scope of alternatives and reasoned decision-making arguments, this Court adopts Judge Hallman's analysis in full.

---

[1] This Court also adopts in full Judge Hallman's determination that if a qualified right of access existed, there would be a triable issue of fact as to whether "BLM's prohibition of cameras is narrowly tailored to serve its interest in conducting safe and efficient gathers." F&R, ECF 66 at 26.

As to the NEPA's hard look requirement, this Court emphasizes why Plaintiffs' arguments cannot overcome the deference that BLM is due under *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 605 U.S. 168 (2025). There, the Supreme Court mandated a "course correction … to bring judicial review under NEPA back in line with the statutory text and common sense." *Id.* at 184. Because NEPA "is a purely procedural statute[,] … an agency's only obligation is to prepare an adequate report." *Id.* at 180. That reality means that a court must "afford substantial deference to the agency." *Id.* Such deference has a few implications. For one, "the question of whether a particular report is detailed enough in a particular case itself requires the exercise of agency discretion—which should not be excessively second-guessed by a court." *Id.* at 181. "[A]gencies possess discretion and must have broad latitude to draw a manageable line." *Id.* at 182 (citation modified). For another, courts should defer to the agency's determination regarding "how far [] the agency [will] go in considering the indirect effects that might occur outside the area of the immediate project[.]" *Id.*

Here, BLM drew a reasonable "manageable line." *Id.* (citation modified). BLM adopted a Statement of Purpose and Need, which this Court must afford deference. *See Friends of Southeast's Future v. Morrison*, 153 F.3d 1059, 1066 (9th Cir.1998) (explaining that courts must give "agencies considerable discretion to define the purpose and need of a project."). The purpose of the agency action was to "return the wild horse herds to levels that are within the established [Appropriate Management Level] in both the Three Fingers and Jackies But[te] HMAs, to maintain the herds within those levels, to protect rangeland resources from deterioration associated with overpopulation, and to restore a natural ecological balance." AR002334. The statement of "need" was similar in nature. *Id.* For their part, Plaintiffs do not

challenge the reasonableness of the Statement of Purpose and Need. *See generally* Complaint, ECF 1.

Here, given that Statement of Purpose and Need, Defendants took the necessary hard look at environmental impacts. The Statement of Purpose and Need limits what aspects of a project must be considered in an agency's analysis. *See League of Wilderness Defs.-Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, 689 F.3d 1060, 1076 (9th Cir. 2012) (reasoning that Plaintiff's hard look argument "mischaracterize[d] the purpose of the Project."). The Statement of Purpose and Need's focus was on reducing wild horse herds to be within the Appropriate Management Level while maintaining a natural ecological balance. *See* AR002334. It was not to reevaluate BLM's policies regarding cameras on helicopters or public observation generally. Here, after considering multiple alternatives and a variety of environmental impacts, BLM adopted the Final Environmental Assessment and selected the alternative of implementing fertility controls and conducting gathers of the wild horses. AR000024–196 (Final Environmental Assessment)[2]; AR000002 (selected alternative).

In their objections, Plaintiffs urge that "BLM has no latitude under the Wild Horse Act to ignore the humane treatment of wild horses when undertaking roundups[.]" Objections to the Findings and Recommendation, ECF 74 at 29. And, it is certainly true that BLM has a legal obligation to account for the humane treatment of wild horses. 16 U.S.C. § 1331. But, it does not follow that BLM must analyze every policy choice—such as the deployment of cameras—that may indirectly affect wild horse welfare. At some point, BLM gets to decide how much detail to provide in its analysis. *See Seven Cnty*, 605 U.S. at 181. To be sure, an analysis that completely

[2] The Administrative Record Index explains that the cover page for the final EA mistakenly labeled it as a "draft" version.

ignored wild horse welfare would violate NEPA. But, given that BLM's extensive analysis of wild horse welfare in its Environmental Assessment and its Finding of No Significant Impact on the environment, F&R, ECF 66 at 6 (citing AR000002), its decision to draw a "manageable line" and to largely exclude cameras from the scope of its analysis was reasonable. *Seven Cnty*, 605 U.S. at 182.

## CONCLUSION

For the reasons set forth above, this Court adopts in part the F&R, ECF 66, with the clarifications discussed above. As to the First Amendment claim, this Court adopts with clarification Judge Hallman's determination that the First Amendment claim fails on the merits. As to the NEPA claim, this Court affirms Judge Hallman's grant of summary judgment to Defendants.

**IT IS SO ORDERED**.

DATED this 24th day of November, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge